2026 IL App (1st) 261251-U

No. 1-26-1251

Order filed July 13, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| BOARD OF DIRECTORS OF 50 EAST BELLEVUE CONDOMINIUM ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 26 CH 05675 26 CH 04473 cons. |
| | ) | |
| THEODORE QUAID, | ) ) | Honorable Myron F. Mackoff, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Wilson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Entry of the temporary restraining order (TRO) is reversed where no emergency was present, the TRO failed to preserve the status quo between the parties, and the TRO granted the ultimate relief sought by the movant.

¶ 2   In this interlocutory appeal brought pursuant to Illinois Supreme Court Rule 307(a)(1) (eff.

Nov. 1, 2017), defendant Theodore Quaid (Quaid) appeals a temporary restraining order (TRO)

entered by the circuit court of Cook County on June 30, 2026, compelling him to allow entry to

his condominium unit to plaintiff, Board of Directors of 50 East Bellevue Condominium Association (Association) and their agents for mold testing. On appeal, Quaid contends that the TRO should be reversed and vacated because: (1) there was no emergency and no irreparable harm; (2) the order is a mandatory injunction that does not preserve the status quo; (3) the order awards the ultimate relief sought in the complaint; (4) the Association showed no clearly ascertained right and no competent proof; and (5) the TRO was entered without the bond contemplated by the statute. For the following reasons we reverse.

¶ 3                                   BACKGROUND

¶ 4      Briefly stated, as alleged in the pleadings filed in the circuit court, the underlying facts are as follows: Quaid owns Unit 702 at 50 East Bellevue in Chicago. In April 2026, after receiving a complaint from the owner of Unit 602 about water spots on the bathroom ceiling, the Association contacted both, the owner of Unit 802 and Quaid, for entry to check for leaks. On April 6, 2006, the building engineer entered Quaid's unit for a visual inspection of the premises. Quaid was present for the inspection. The engineer cut a 14-inch by 18-inch access opening underneath the bathroom sink and allegedly observed soft and damp drywall, black mold, water droplets on the drain and supply lines, and wet ceiling and floor conditions behind the wall. The engineer also observed that the bathroom exhaust vent grille had no air circulation and was clogged with dirt, dog hair and other built-up debris. The engineer partially cleared the vent resulting in restored air flow. The engineer informed Quaid that he was responsible for maintaining the vent grille in a clean condition. The following day, Quaid was advised by the Association in writing via email that the clogged vent prevented circulation and was believed to have caused condensation and

damage to common areas and units below. He was also advised that he would be responsible for any remediation.

¶ 5    Per the Association, it attempted a professional evaluation of Quaid's unit on April 13, 2026, by Parkside Restoration; however, Quaid's attorney terminated the meeting and did not allow the inspection. Quaid later agreed that Environmental Group Services, Ltd. (EGSL) could inspect and test the unit on April 27, 2026.

¶ 6    On April 27, 2026, EGSL inspected Quaid's master bathroom. Quaid asserts that EGSL's original May 1, 2026, report recommended a ductwork inspection and noted that the unit was heated/cooled via a forced air HVAC system. Quaid states that a revised report issued on May 5, 2026, deleted that language, and he maintains that the deleted language was the only finding pointing to common-element infrastructure that the Association is obligated to maintain. The same day, the Association's counsel "demanded" that ServPro be allowed access that afternoon or the following morning, which was denied by Quaid's counsel on May 7, 2026. The Association responded with a 10-day enforcement demand under Section 11.01 of the Declaration. Quaid asserts that the notice lapsed in mid-May without further action.

¶ 7    The Association maintains, however, that after receiving an Indoor Air Quality Investigation Report from EGSL , it repeatedly requested access to assess the conditions and begin remediation. Quaid's counsel did not respond to the Association, and the property manager subsequently requested access directly from Quaid after providing a copy of the signed report. Quaid, through counsel, denied access on May 7, 2026.

¶ 8    Quaid filed suit on May 8, 2026, (case number 2026 CH 04473), alleging seven counts against the Association: breach of fiduciary duty, breach of the Declaration, violations of the

Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2026)), and related claims. On May 22, 2026, Quaid sought a preliminary injunction to restrain the Association's threatened entry and enforcement. The Association entered its appearance but did not seek a TRO, preliminary injunction or assert any counterclaims. On June 15, 2026, the trial court set a briefing schedule: the Association's response to the preliminary injunction was due July 13, 2026, the reply was due July 27, 2026, and a status was scheduled for August 11, 2026.

¶ 9     However, on June 12, 2026, the Association filed an unverified complaint against Quaid (case number 2026 CH 05675), alleging breach of contract and requesting injunctive relief for access to the unit. The Association subsequently filed a petition for a TRO on June 24, 2026, which Quaid asserts was 54 days after the May 1, 2026, initial report from EGSL. Quaid opposed and moved to dismiss on June 25, 2026.

¶ 10     Quaid contends that on June 26, 2026, the trial judge assigned to the Association's case questioned whether the matter was an emergency, noted that the complaint was unverified, and consolidated the case with Quaid's case. That same day, the Association filed an amended and verified complaint as well as an emergency motion for a TRO to allow access by EGSL (and then ServPro per an amended motion). A hearing on the Association's emergency motion was held on June 30, 2026, after which the trial court entered an emergency TRO granting the Association access to Quaid's unit on 24 hours' notice. The court's order stated that it found that the Association showed all of the elements required for a TRO: (a) a likelihood of success on the merits, (b) a clearly ascertainable right in need of protection, namely the right to access Quaid's unit for the purpose of ascertaining the extent of any damage to the common elements, (c) irreparable injury if not permitted to access Quaid's unit to assess mold damage to the common

elements, and (d) lack of adequate remedy at law because money damages at the conclusion of the case would be insufficient to address current harm that may increase over time. The TRO further stated that: it was entered to preserve the status quo; no remediation work was to occur under the TRO; it expires on July 8, 2026, and sets a preliminary injunction conversion hearing for the same date.[1] The trial court subsequently denied Quaid's oral motion to stay pending appeal. No court reporter was present for the hearing; however, Quaid's counsel provided an affidavit authenticating the supporting record pursuant to Illinois Supreme Court Rules 307(d)(1) and 328..

¶ 11    Quaid filed this appeal at 12:29 p.m. on June 30, 2026, pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017) seeking review of the TRO order on July 1, 2026. Quaid simultaneously filed an emergency motion to stay the TRO pending resolution of this appeal, which this court granted on July 2, 2026. Quaid asserts that at approximately 1:56 p.m., the Association's counsel notified Quaid's counsel that the Association had retained Weaver Consultants to perform mold testing on July 2, 2026.

¶ 12                            ANALYSIS

¶ 13    On appeal, Quaid requests that this court reverse and vacate the TRO entered on June 30, 2026, that compels him to admit the Association and its agents into his unit. As grounds for reversal, Quaid contends that: (1) there was no emergency and no irreparable harm; (2) the order is a mandatory injunction that does not preserve the status quo; (3) the order awards the ultimate relief sought in the complaint; (4) the Association showed no clear ascertainable right and no

---

[1] We take judicial notice that at the July 8, 2026, court date, the matter was set for a status date on August 11, 2026, per the case information contained on the website of the Clerk of the Circuit Court of Cook County. See https://casesearch.cookcountyclerkofcourt.org/CivilCaseSearchAPI.aspx.

competent proof; and (5) the order was entered without the bond contemplated by section 11-103 of the Code of Civil Procedure (Code) (735 ILCS 5/11-103 (West 2026)).

¶ 14 In response, the Association contends that Quaid's petition should be denied because: (1) Quaid has not shown that the trial court abused its discretion; (2) the TRO preserve's the Board's access rights and does not grant final relief; (3) the Board established the requirements for a TRO; (4) Quaid's objections do not warrant reversal under Rule 307(d) (eff. Nov. 1, 2017); and Quaid fatally relies upon false statements of law.

¶ 15 Pursuant to Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), an appeal may be taken from an interlocutory order of the circuit court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction. Our supreme court has described an injunction as a judicial process, by which a party is required to do a particular thing or to refrain from doing a particular thing according to the "exigency of the writ, the most common sort of which operates as a restraint upon the party in the exercise of his real or supposed right." *In re A Minor*, 127 Ill. 2d 247, 261 (1996) (quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869)); *Doe v. Northwestern Memorial Hospital*, 2014 IL App (1st) 140212, ¶ 29. Here, there is no question that the grant of the Association's motion for a TRO is an injunction and we therefore have jurisdiction under Rule 307(a)(1).

¶ 16 Before addressing the merits of this case, we first consider whether this appeal should be dismissed in its entirety because of Quaid's failure to include a report of proceedings or a certified bystander's report with the record in this case.

¶ 17 It is the duty of every appellant in a reviewing court to provide a sufficient record to support a claim of error, and in the absence of such a record, the reviewing court will presume that the trial

court's order was in conformity with established legal principles and had a sufficient factual basis. *Villa Dubois, LLC v. Sabeel El*, 2020 IL App (1st) 190182, ¶ 21 (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). In the absence of a proper record, a reviewing court may dismiss the appeal, or alternately summarily affirm the judgment of the trial court. *Villa DuBois*, 2020 IL App (1st) 190182, ¶ 21. However, the failure to present a report of proceedings does not require automatic dismissal or affirmance where the issues can be resolved on the record as it stands. *Id.*

¶ 18 We find that dismissal or summary affirmance is not necessary in this case as the issues on appeal can be resolved on the record, and we therefore proceed to address the issues raised by Quaid on appeal.

¶ 19 As noted above, with respect to injunctions, Supreme Court Rule 307(a)(1) allows a party to appeal as of right from an interlocutory order of the circuit court granting an injunction, as happened here. See *Ritchie Multi-Strategies Global, LLC By and Through Ritchie Capital Management, LLC v. Hutzenga Managers Fund LLC*, 2019 IL App (1st) 182664, ¶ 12. When a party is seeking review of the granting of a TRO, the rule requires notice of appeal to be filed within two days of that order, followed by an extraordinarily expedited briefing schedule. Ill. S. Ct. R. 307(d) (eff. Nov. 1, 2017). This expedited briefing schedule allows the parties only two days to file legal memoranda in lieu of briefs and culminates with the appellate court being required to decide the appeal within five business days of the end of briefing. *Id.*

¶ 20 A TRO preserves the status quo pending a decision on the merits until the merits of the case are decided. *Ron & Mark Ward, LLC v. Bank of Herrin*, 2024 IL App (5th) 230274, ¶ 44. A TRO is an extraordinary remedy which is applicable only to situations where an extreme emergency exists and serious harm would result in the absence of an injunction. *Delta Medical*

*Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 788 (2002). The trial court may also deny a TRO where the balance of hardships does not favor the moving party, and the moving party must raise a fair question as to each element required to obtain the injunction. *Ron & Mark Ward*, 2024 IL App (5th) 230274, ¶ 44.

¶ 21    The party seeking the TRO must establish the following: (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case. *Somer v. Bloom Township Democratic Organization*, 2020 IL App (1st) 201182, ¶ 16. In addition, the trial court must then conclude that the balance of hardships to the parties supports the injunctive relief requested. *Delta Medical Systems*, 331 Ill. App. 3d at 788.

¶ 22    A decision to grant or deny a TRO is generally reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs only when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view. *Id.* However, where the trial court does not make any factual findings and instead rules on a question of law, the standard of review is *de novo*. *Ron & Mark Ward*, 2024 IL App (5th) 230274, ¶ 45.

¶ 23    In an interlocutory appeal from an order granting a TRO, the reviewing court determines whether there was a sufficient showing made to the circuit court to sustain its order granting or denying the relief sought. *Health Care Service Corporation v. Walgreen Company*, 2023 IL App (1st) 230547, ¶ 19. Instead of deciding controverted facts on the merits of the case, the reviewing court determines only whether the plaintiff has demonstrated that there is a fair question as to the existence of the claimed rights; that the circumstances lead to a reasonable belief that the movant

will probably be entitled to the relief sought and that the status quo should be preserved until the case can be decided on the merits. *Delta Medical Systems*, 331 Ill. App. 3d at 788.

¶ 24    Issuance of a TRO is intended to preserve the status quo pending a determination of whether a TRO should be granted. *M.D. by Fox v. Momence Community Unified School District 1*, 2026 IL App (3d) 260007, ¶ 10. The status quo is typically defined as the last actual, peaceable, uncontested status which preceded the pending controversy. *Id.*  The Association argues that the last peaceable and uncontested status was the authority to exercise its rights pursuant to the Declaration of Condominium. Quaid, however, argues that the last peaceable and uncontested status was his "undisturbed possession" of his condominium unit.  We agree in part with both.  On April 6, 2026, prior to the filing of Quaid's complaint,  the Association's building engineer entered Unit 702, conducted a visual inspection and cut a hole in the bathroom wall. On April 27, the Association retained Environmental Group[ Services, which inspected the unit and conducted an initial report and a revised report on May 5, 2026.  In sum, the status quo was the Association having already exercised its right to inspect and disturb Quaid's peaceful use, by cutting a whole in the wall for purposes of the inspection.  The trial court's order went further than the status quo when it ordered additional access to unspecified common elements within Quaid's unit.

¶ 25    Turning to the urgency of the relief, according to the pleadings contained in the record, the issue of water damage arose or was brought to the Association's attention in mid-April 2026, approximately three months ago. Although the parties were in dispute, there was no legal action taken on this matter by the Association until June 2026, despite Quaid having filed his suit on May 8, 2026.  The parties also confirmed that upon the apparent cleaning of the vent, the condensation ceased.  Moreover, the Association did not seek and the court did not order the commencement of

any remediation work under the terms of the emergency TRO. The June 30, 2026, emergency TRO specifically stated, "No remediation work is to occur under this Order." These circumstances belie the presence of an extreme emergency such as to justify issuance of a TRO. See *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 31 (quoting *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010)) (a preliminary injunction is an "extraordinary" remedy that "should be granted only in situations of extreme emergency or where serious harm would result if the preliminary injunction was not issued.").

¶ 26     We do not agree, however, with Quaid's claim that the Association's allegations are speculative  We find that the maintenance worker's observation of moisture and the Indoor Air Quality Investigation Report indicating presence of mold spores rises above mere speculation.

¶ 27     Additionally, both parties have pending, competing motions for preliminary injunction currently set for hearing on August 11, 2026, approximately four weeks away. It is abundantly clear that the TRO entered in this case goes to the very heart of the controversy between the parties and necessarily extinguishes Quaid's case and consequently any rights he seeks to protect while also granting the Association the very relief it seeks with its request for preliminary injunction. A TRO is not a vehicle for a party to win its case at the outset. While the Association alleges that there is additional relief sought that remains to be determined, we note that such additional relief amounts to reimbursement of costs, expenses, and attorney fees resulting from the within complaint for injunctive relief. Further, the TRO does not put the parties in the last peaceable and uncontested status that preceded the pending controversy. Rather, it essentially grants one party the exact relief sought in the controversy, while failing to address the other party's suit, thereby making the trial courts findings unreasonable. We acknowledge that this decision is made all the

more difficult in this case because both parties have filed suit seeking opposite relief and preliminary injunctions, which is not the usual set of circumstances before this court. However, as stated above, the purpose of a TRO is to preserve the status quo pending a determination of whether a preliminary injunction should be granted. *Id.* That did not happen here.

¶ 28 As such, we conclude that grant of the TRO was an abuse of discretion under the circumstances presented here. We decline to address the bond issue at this time.

¶ 29 CONCLUSION

¶ 30 For the foregoing reasons, we reverse the entry of the TRO by the circuit court of Cook County.

¶ 31 Reversed.